IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

GW Rentals, LLC,
Windmill Trucker, Inc.,
Lee J. Glessner, Gary W. Glessner,
Norma Tubaugh, Dawnisa Tubaugh,
Clarence Tubaugh, Glessner Real Estate
Properties, LLC, Kathy A. Elliott, and Robert
B. Elliott,

    Plaintiffs,

v.                                                                                       Civil Action No. 5:14-CV-154
                                                                                     Judge Bailey

CLS Group, Capital Land Services, Inc.,
Chesapeake Appalachia, LLC, Chesapeake
Energy Corp., Southwestern Energy Co., individually
and as successors in interest to Chesapeake
Appalachia, LLC and Chesapeake Energy Corp.,
Southwestern Energy, individually and
as successors in interest to Chesapeake
Appalachia, LLC and Chesapeake Energy Corp.,
Southwestern Energy Production Co., individually and
as successors in interest to Chesapeake
Appalachia, LLC and Chesapeake Energy Corp., and
Southwestern Energy Services Co., individually and
as successors in interest to Chesapeake
Appalachia, LLC and Chesapeake Energy Corp.,

    Defendants.

## ORDER DENYING PLAINTIFFS' MOTION TO REMAND

Currently pending before this Court is the plaintiffs' Motion to Remand or in the Alternative Motion for Limited Discovery [Doc. 15], filed on December 22, 2014. Defendants Chesapeake Energy Corporation ("Chesapeake"), Chesapeake Appalachia, LLC, and Capital Land Service, Inc. filed a response on January 5, 2015. [Doc. 31]. Defendants Southwestern Energy Company, Southwestern Energy, Southwestern Energy

Production Company, and Southwestern Energy Services Company (hereinafter referred to as "Southwestern Entities") also filed a response on January 5, 2015. [Doc. 34]. In addition, the Southwestern Entities filed two motions to dismiss [Docs. 9 & 32]. Where, as here, a motion to remand and a Rule 12(b)(6) motion to dismiss are both made, it is ordinarily proper to resolve a motion to remand before deciding the Rule 12(b)(6) motion. This Court, having reviewed the motion and the memoranda submitted with regard thereto, finds that the plaintiffs' motion to remand should be **DENIED.**

## I. BACKGROUND

The plaintiffs originally filed this action in the Circuit Court of Ohio County, West Virginia, on October 23, 2014. [Doc. 1-3]. In 2008, plaintiffs leased their real property mineral interests to defendants CLS Group, Chesapeake Appalachia, LLC, and Chesapeake. Collectively, the plaintiffs leased 743.711 acres of land that are situated in Ohio and Marshall counties. Compl. ¶ 28. Plaintiffs allege that defendant Keith J. Balaschak[1], individually and as a representative of CLS Group, Chesapeake Appalachia, LLC, and Chesapeake Energy Corporations induced plaintiffs to lease their mineral interests for a lower per acre amount. *Id.* ¶ 32. He represented that, at the expiration of the original five year lease, the plaintiffs could "re-lease in the 'boom' period of the Marcellus Shale leasing for a higher per acre up front bonus payment." *Id.* During the lease, the Chesapeake entities installed and are now operating a well pad on the parcel belonging to GW Rentals, LLC. This well pad is extracting minerals from all or some of the properties

---

[1] Per plaintiffs' First Amended Complaint, Keith Balaschak is no longer a named defendant.

2

held by the plaintiffs. However, the plaintiffs have not received any royalty payments. *Id.* ¶ 40. The defendants have not sought to extend or renew the lease which expired in 2013. *Id.* ¶ 43.

In their Complaint, plaintiffs allege numerous causes of action against the defendants, including breach of contract (count 1), conversion (count 2), ejectment (count 3), slander of title (count 4), interference with business relationships (count 5), breach of fiduciary duty (count 6), breach of covenant of good faith and fair dealing (count 7), unauthorized practice of law (count 8), negligent or intentional misrepresentation (count 9), breach of lease (count 10), improper notary (count 11), trespass (count 12), and successor in interest liability on the Southwestern Entities (count 13). As a result of the unlawful conduct, plaintiffs seek monetary damages for value of the liquids extracted from their properties, the market value of re-leasing their properties, and other damages. *Id.* ¶¶ 145–56.

On November 26, 2014, defendants filed a Notice of Removal [Doc. 1] arguing that this Court has subject matter jurisdiction over the litigation based on diversity jurisdiction. For the following reasons, this Court agrees and denies the plaintiffs' motion to remand.

## II. DISCUSSION

"If a plaintiff files suit in state court and the defendant seeks to adjudicate the matter in federal court through removal, it is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter." **Strawn v. AT & T Mobility**, 530 F.3d 293, 296 (4th Cir. 2008) (citation omitted).

Federal courts "'are obliged to construe removal jurisdiction strictly because of the

3

'significant federalism concerns implicated,' and 'if federal jurisdiction is doubtful, a remand to state court is necessary.'" ***Md. Stadium Auth. v. Ellerbe Becket Inc.***, 407 F.3d 255, 260 (4th Cir. 2005) (internal quotation marks, citations, and alterations omitted); *see also* ***Shamrock Oil & Gas Corp. v. Sheets***, 313 U.S. 100, 109 (1941) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." (internal citation omitted)); *see also* ***Palisades Collections LLC v. Shorts***, 552 F.3d 327, 333–34 (4th Cir. 2008). On the other hand, "federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given to them.'" ***Gum v. Gen. Elec. Co.***, 5 F.Supp. 2d 412, 415 (S.D. W. Va. 1998) (quoting ***Colorado River Water Conservation Dist. v. United States***, 424 U.S. 800, 817 (1976)).

Diversity jurisdiction requires that every defendant be completely diverse from every plaintiff. *See* 28 U.S.C. § 1332. Plaintiffs challenge removal for numerous reasons. First, because plaintiff Dawnisa Tubaugh and the Southwestern Entities are all citizens of Texas, diversity does not exist. Second, because plaintiffs are residents of West Virginia and Texas, and Chesapeake maintains a principal place of business in Texas and/or West Virginia, diversity does not exist. Third, because many plaintiffs are residents of West Virginia and Chesapeake Appalachia, LLC maintains a principal place of business in West Virginia, diversity does not exist. Fourth, plaintiffs argue that defendants have failed to prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. This Court finds that the defendants successfully defeat these arguments.

4

**A.    Chesapeake Energy Company is not a citizen of West Virginia for diversity purposes.**

For diversity purposes, a corporation is deemed a citizen of the state of its incorporation and of its principal place of business. *See **Central W.Va. Energy Co., Inc. v. Mountain State Carbon, LLC***, 636 F.3d 101, 103 (4th Cir. 2011); *see also* 28 U.S.C. § 1332(c)(1). The principal place of business is the corporation's "nerve center;" the "location of the corporation's officers who direct, control, and coordinate the company's business." *See **Mountain State Carbon, LLC***, 636 F.3d at 103.

Defendants argue that West Virginia is not Chesapeake's principal place of business. To support this argument, they offer an affidavit of Daniel Weinmeister, who is employed by Chesapeake Appalachia, LLC, as a land manager, that states that Chesapeake's principal place of business is Oklahoma City, Oklahoma. [Doc. 1-7]. Plaintiffs argue that because Mr. Weinmeister is not employed by Chesapeake, he is unqualified to offer evidence regarding Chesapeake's organizational structure, thus defendants fail to meet their burden. In the alternative, plaintiffs request discovery to investigate Chesapeake's involvement in West Virginia.

In support of remand, plaintiffs point to Chesapeake's website that states it maintains "main offices" in both West Virginia and Texas. According to the website, Chesapeake also has main offices in Wyoming, Oklahoma, Ohio, Pennsylvania, and Louisiana. Plaintiffs' argument that Chesapeake would maintain principal places of business in seven states is contrary to Supreme Court jurisprudence, which holds that a "corporation's 'nerve center,' usually its main headquarters, is a single place." ***Hertz Corp. v. Friend***, 559 U.S. 77, 93 (2010). Notably, on the same webpage plaintiffs reference,

Chesapeake states that its corporate headquarters is located in Oklahoma City, Oklahoma, which is consistent with the affidavit of Daniel Weinmeister. [Doc. 1-7].

Plaintiffs' argument that defendants fail to meet their burden is unpersuasive, and the case they cite is distinguishable. See **Krankemann v. Monsanto Co.**, No. 3:09-CV-1390, 2010 U.S. Dist. Lexis 106481 (S.D. W.Va. Sept. 9, 2010) (Goodwin, J.). In **Krankemann**, the plaintiffs challenged defendants argument that the corporation's principal place of business was located outside of West Virginia with convincing evidence, including multiple documents filed by the corporation that listed West Virginia as its principal place of business. *Id.* at 11–14. The Court determined that the location of the defendant's principal place of business was ambiguous, and it resolved that ambiguity in favor of the plaintiffs. *Id.* Here, there is no ambiguity. Defendants offered the affidavit of employee of Chesapeake Appalachia, LLC, who swore that Chesapeake's principal place of business is in Oklahoma. This is consistent with the evidence proffered by plaintiffs: Chesapeake's website states its corporate headquarters is located in Oklahoma City.

**B.     Chesapeake Appalachia, LLC is a not a citizen of West Virginia for diversity purposes.**

Plaintiffs allege that Chesapeake Appalachia, LLC is a West Virginia limited liability company and maintains a principal place of business in West Virginia. For purposes of diversity jurisdiction, the citizenship of a limited liability company is determined by the citizenship of all its members. See **Mountain State Carbon**, 636 F.3d at 103. Evidence offered by the defendants show that Chesapeake Appalachia is a limited liability company with Chesapeake as its sole member. As discussed above, because Chesapeake is not considered a West Virginia citizen for diversity purposes, neither will Chesapeake

Appalachia, LLC.

**C.     The Southwestern Entities were fraudulently joined.**

When nondiverse defendants are joined at the time of removal, the fraudulent joinder doctrine "permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." **Mayes v. Rapoport**, 198 F.3d 457, 461 (4th Cir. 1999). "To show fraudulent joinder, the removing party must demonstrate, 'outright fraud in the plaintiff's pleading of jurisdictional facts,' or that 'there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" **Hartley v. CSX Transp.**, 187 F.3d 422, 424 (4th Cir. 1999) (quoting **Marshall v. Manville Sales Corp.**, 6 F.3d 229, 232 (4th Cir. 1993)).

The party alleging fraudulent joinder bears a burden to show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor. *See* **Hartley**, 187 F.3d at 424. The burden to establish fraudulent joinder is on the defendant to establish fraudulent joinder by clear and convincing evidence. *See* **Rinehart v. Consol. Coal Co.**, 660 F.Supp. 1140, 1141 (N.D. W.Va. 1987). The plaintiff need only have a "slight possibility of a right to relief" against a nondiverse defendant for jurisdiction to be improper in federal court. **Hartley**, 187 F.3d at 426. Furthermore, "in determining whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." **Mayes**, 198 F.3d at 464 (internal citations omitted).

In the Complaint, plaintiffs allege that the Southwestern Entities, which are all

citizens of Texas for the purposes of diversity jurisdiction, are successors in interest to Chesapeake Appalachia, LLC and Chesapeake Energy Corporation because the Southwestern Entities acquired an equitable interest in the plaintiffs' mineral leases. Compl. ¶¶ 132–141. Yet, defendants contend that at the time the Complaint was filed, on October 23, 2014, the Southwestern Entities maintained no interest in the plaintiffs' mineral leases. Rather, at the time of the Complaint, Chesapeake and Southwestern Energy Production Company only executed a Purchase and Sale Agreement, which did not confer any interest in the leases to the Southwestern Entities.

This Court is directed to look at citizenship at the time the Complaint is filed. *See* ***Freeport-McMoRan, Inc. v. KN Energy, Inc.***, 498 U.S. 426, 428 (1991) (per curiam) ("We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events.") In the present case, defendants have met their burden of clear and convincing evidence that the Southwestern Entities were fraudulently joined, and at the time the complaint was filed, plaintiffs could not assert any cause of action against the Southwestern Entities.

The parties introduced the following evidence. On October 14, 2014, Chesapeake Appalachia, LLC, entered into a purchase and sale agreement with Southwestern Energy Production Company, a subsidiary of Southwestern Energy Company, where Chesapeake Appalachia, LLC agreed to sell Southwestern Energy Production Company approximately 413,000 acres in Northern West Virginia and Southern Pennsylvania. *See* SEC Form 8-K, Doc.16-2, at 3. At the execution of the purchase and sale agreement, Southwestern Energy Company paid Chesapeake a deposit of $269 million. *See* Chesapeake SEC Form

10-Q, Doc. 15-1, at 3. Two days later, Chesapeake publically announced the agreement. Both the announcement and the SEC form note that the sale was subject to customary closing conditions, and the sale was expected to close in the fourth quarter of 2014. *Id.* Then, on December 22, 2014, Southwestern Energy Company announced that its purchase of Chesapeake's assets closed. *See* Plfs' Memo. in Reply, at 6; Doc. 37.

Plaintiffs fail to provide a legal argument for this Court to find that, as of October 23, 2014, when the Complaint was filed, Southwestern Entities had a legal interest in the plaintiffs' property. Although plaintiffs cite to **Hawkins v. Southwestern Mut. Fire Ins. Co.**, 80 W. Va. 773, 93 S.E.2d 873 (1917), this Court finds it unpersuasive. In a declaratory judgment action, the Court found that the plaintiff had an insurable interest in property that the plaintiff did not own. ***Id.*** at 773, 873. The Court reasoned that plaintiff used her owned money to build a boarding house on the property, and her husband had agreed to convey the property to her. Further, the plaintiff was in "sole possession and control of the premises." ***Id.*** at 774, 874. Although title to the property belonged to the plaintiff's husband, the Court found an insurable interest existed because the plaintiff would "suffer a pecuniary loss from the destruction of the subject-matter of insurance." ***Id.*** Based on **Hawkins**, plaintiffs argue that even though the Southwestern Entities had yet to obtain title to the leases, the Southwestern Entities maintained a legal interest in the property. None of the facts or legal issues in **Hawkins** are similar to the instant case.

Here, the parties had a contract, and in October 2014, the parties were unsure whether the sale would close or not. Under West Virginia law,

> [a]n agreement to sell and convey land, but which is not a conveyance operating as a present transfer of legal estate and seisin, is at law wholly

executory and produces no effect upon the estates and titles of the parties.

*Fabian v. Kennedy*, 333 F.Supp. 1001, 1006 (N.D. W.Va. 1971) (quoting *Watson v. Coast*, 35 W.Va. 463, 477, 14 S.E. 249, 253 (1891)).  Even after resolving all questions of fact and law in the plaintiffs favor, as of the date of filing the Complaint, the plaintiffs fail to set forth any reasonable basis for predicting that state law could impose liability on the Southwestern Entities.  See *Hartley v. CSX Transp.*, 187 F.3d 422, 425 (4th Cir. 1999). Therefore, the Southwestern Entities are dismissed.[2]

After adjudicating jurisdiction, this Court dismisses the Southwestern Entities from the instant case.  Accordingly, the Southwestern Entities' 12(b)(6) motions to dismiss are denied as moot.  Because the Southwestern Entities are dismissed from the instant action, this Court need not consider whether plaintiff Dawnisa Tabaugh is fraudulently joined.

**D.      The amount in controversy is met.**

The burden of demonstrating jurisdiction resides with the party seeking removal. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994).  Because removal jurisdiction raises significant federalism concerns, "if federal jurisdiction is doubtful, a remand is necessary." *Id.*  "A defendant that removes a case from state court in which the damages sought are unspecified, asserting the existence of federal diversity jurisdiction, must prove by a preponderance of the evidence that the value of the matter in controversy exceeds the jurisdictional amount."  *Landmark Corp. v. Apogee Coal Co.*, 945 F.Supp. 932, 935  (S.D. W.Va. 1996); *see also* *Francis v. Allstate Ins. Co.*, 709 F.3d

---

[2]      Based upon subsequent events, the plaintiffs may amend and again add the Southwestern Entities.  Such an addition has no effect on the jurisdictional issue. *See Freeport-McMoRan, Inc. v. KN Energy, Inc.*, 498 U.S. 426, 428 (1991) (per curiam).

362, 367 (4th Cir. 2013).

To calculate this amount, a court may consider the entire record and make an independent evaluation of whether the amount in controversy has been satisfied. *See* **Mullins v. Harry's Mobile Homes**, 861 F.Supp. 22, 24 (S.D. W.Va. 1994). In conducting this analysis, the court may consider:

> the type and extent of the plaintiff's injuries and the possible damages recoverable therefore, including punitive damages if appropriate. The possible damages recoverable may be shown by the amounts awarded in other similar cases. Another factor for the court to consider would be the expenses or losses incurred by the plaintiff up to the date the notice of removal was filed. The defendant may also present evidence of any settlement demands made by the plaintiff prior to removal although the weight to be given such demands is a matter of dispute among courts.

**Watterson v. GMRI, Inc.**, 14 F.Supp.2d 844, 850 (S.D. W.Va. 1997) (internal citations omitted). In addition, a court is permitted to use "common sense" when making its decision. **Mullins**, 861 F.Supp. at 24.

In plaintiffs' prayer for relief, they request that the existing leases are declared abandoned, expired, and void. In addition, the plaintiffs seek compensatory damages, and damages from lost royalties, economic loss, conversion, breach of contract, property damage, and trespass.

Although the damage award is not specified by the plaintiffs, the Court finds that the defendants have met this burden by a preponderance of the evidence. When plaintiffs signed the leases in 2008, plaintiffs allege that defendant Balaschak represented that the plaintiffs could renegotiate the leases terms in five years for a "higher per acre up front bonus payment." Compl. ¶ 32. Therefore, at the very least, plaintiffs seek to cancel the

11

current leases and re-lease to receive higher up-front bonuses and royalty payments. *See id.* ¶ 45.

Defendants state, by affidavit of Mr. Weinmeister, that if defendants were to re-acquire the plaintiffs' leases at market rates, the amount would be over $75,000. Although the parties do not address this, in meeting the amount in controversy, this Court can not aggregate the plaintiffs' claims. Rather, one plaintiff's claims must meet the amount in controversy. *See e.g.* **Everett v. Verizon Wireless, Inc.**, 460 F.3d 818, 822 (6th Cir. 2006). In the present case, this is satisfied. For instance, the lease between Lee J. Glessner and Chesapeake Appalachia, LLC was for 86.894 acres. *See* Compl. Ex. D. In their Amended Complaint, the plaintiffs state that they received $1,000 per acre. *See* Am. Compl. ¶ 85, Doc. 12. At the very least, one plaintiff's damages would exceed $86,000. Therefore, the amount in controversy is satisfied.

### III. CONCLUSION

For the foregoing reasons, this Court finds that the plaintiffs' Motion to Remand **[Doc. 15]** should be, and hereby is, **DENIED**. Accordingly, Southwestern Energy Company, Southwestern Energy, Southwestern Energy Services Company, and Southwestern Energy Production Company are **DISMISSED**. It necessarily follows that the Southwestern Entities' Motions to Dismiss **[Docs. 9 & 32]** are denied as **MOOT**. Plaintiffs' Motion to File a Supplement Memorandum in Support of Motion to Remand **[Doc. 41]** is also **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record.

**DATED**: January 29, 2015.

/s/ John Preston Bailey
JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE